Paul E. Summit
Andrew T. Solomon
Caitlin C. Fahey (admitted *pro hac vice*)
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, NY 10019
(212) 660-3000

*Attorneys for Petitioner/Judgment Creditor*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x
                                                                          :
THE EXPORT-IMPORT BANK OF THE REPUBLIC                                    :
OF CHINA,                                                                 :
                                                                          :       97 CIV 3090 (LAK)
                                  Judgment Creditor,                      :
                                                                          :
       -against-                                                          :
                                                                          :
REPUBLIQUE DU NIGER,                                                      :
                                                                          :
                                  Judgment Debtor.                        :
                                                                          :
------------------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW OF THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA IN SUPPORT OF ITS MOTION BROUGHT BY AN ORDER TO SHOW CAUSE FOR PERMISSION TO SERVE A RESTRAINING NOTICE AND FOR A TEMPORARY RESTRAINING ORDER**


SULLIVAN & WORCESTER LLP
Paul E. Summit
Andrew T. Solomon
Caitlin C. Fahey (admitted *pro hac vice*)
1633 BROADWAY
NEW YORK, NY 10019

*Attorneys for Petitioner/Judgment Creditor*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

IMMINENT DAMAGE TO EX-IM BANK IF THE FUNDS ARE NOT RESTRAINED...........4

RED HERRING ONE:  "ACTUAL ADJUDICATION" .............................................5

RED HERRING TWO:  THE "SUBJECT MATTER JURISDICTION CHALLENGE...............7

RED HERRING THREE:  PERSONAL JURISDICTION OVER SOPAMIN ...........................7

RED HERRING FOUR:  THE IMMINENT HARM TO SOPAMIN AND EXELON.................8

RED HERRING FIVE:  THE COMMERCIAL USE EXCEPTION ...........................................10

EX-IM BANK IS ENTITLED TO DISCOVERY.......................................................11

THE TRO BOND ..............................................................................................14

CONCLUSION..................................................................................................16

# TABLE OF AUTHORITES

Cases

*Banco Central De Paraguay v. Paraguay Humanitarian Found., Inc.*,
   No. 01 Civ. 9649 (JFK), 2006 WL 3456521 .......................................................... 12

*Centerpointe Corporate Park Partnership 350 v. MONY*,
   946 N.Y.S.2d 354 (4th Dept. 2012) ...................................................................... 7

*Doctor's Associates, Inc. v. Stuart*,
   85 F.3d 975 (2d Cir. 1996).................................................................................. 14

*Doyne v. Saettele*,
   112 F.2d 155 (8th Cir. 1940) .............................................................................. 14

*EM Ltd. v. Republic of Argentina*,
   389 Fed. App'x 38 (2d Cir. 2010) ...................................................................... 14

*Export Import Bank of the Republic of China v. Grenada*,
   768 F.3d 75 (2d Cir. 2014)............................................................................ 11, 12

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983) ..................................................................................... 14, 15

*Fischer Diamonds v. Meyer Designs*,
   2006 WL 1720431 (E.D.N.Y. 2006)...................................................................... 6

*Gadsby & Hannah v. Socialist Republic of Romania*,
   698 F. Supp. 483 (S.D.N.Y. 1988) ........................................................................ 2

*In re Terrorist Attacks on September 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)............................................................. 12, 13

*JSC Foreign Econ. Ass'n and Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003)................................................................... 6

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)............................................................................ 4, 5

*Northern Mariana Islands v. Millard*,
   845 F. Supp. 2d 579 (S.D.N.Y. 2012)............................................................... 3, 8

*Peacock v. Thomas*,
   516 U.S. 349 (1996)............................................................................................. 7

*Peterson v. Islamic Republic of Iran*,
   No. 10 Civ. 4518 (KBF), 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ................. 2

*Plaza Hotel Assocs. v. Wellington Associates, Inc.*,
    378 N.Y.S.2d 859 (Sup. Ct. N.Y. County Nov. 3, 1975) ................................. 1, 5, 6

*Republic of Argentina v. NML Capital, Ltd.*,
    134 S.Ct. 2250 (2014) ........................................................................................ 11

*Rubin v. Islamic State of Iran*,
    637 F.3d 783 (7th Cir. 2011) ............................................................................. 10

*Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*,
    263 N.Y.S.2d 354 (Sup. Ct. New York County 1965), ............................ 5, 6-7, 16

*Thompson v. Pollack*,
    873 N.Y.S.2d 173 (2nd Dept. 2009) .................................................................. 5, 6

*U.S. v. Bedford Assocs.*,
    618 F.2d 904 (2d Cir. 1980)............................................................................... 15

*UBS Securities LLC v. Highland Capital Mgt., L.P.*,
    42 Misc. 3d 580 (Sup. Ct. 2013) ......................................................................... 6

*USA Auto Funding, LLC v. Washington Mut., Inc.*,
    No 16440/05, 2006 WL 1493115 (Sup. Ct. Nassau County Mar. 30, 2006)............................. 2

*Villante v. Dep't of Corr. of N.Y.C.*,
    786 F.2d 516 (2d Cir. 1986)............................................................................ 13-14

*Vinos Argentinos Imports USA, Inc. v. Los Andes Imports, Inc.*,
    No. 91 Civ. 2587 (JSM), 1993 WL 465353 (S.D.N.Y. Nov. 8, 1993) ..................................... 1

Statutes

28 U.S.C. § 1330 ........................................................................................................ 7

28 U.S.C. §1602 et seq.................................................................................... *passim*

28 U.S.C. § 1610(a) .................................................................................................. 11

28 U.S.C. §1610(c) ........................................................................................... 1, 2, 14

New York CPLR 5222 .................................................................................... *passim*

New York CPLR 5222-a .............................................................................................. 3

New York CPLR 5223 ............................................................................................... 12

New York CPLR 5225 ............................................................................................. 3, 8

New York CPLR 5230 ................................................................................................. 3

Rules

Fed. R. Civ. P. 64 ................................................................................................................ 7

Fed. R. Civ. P. 69(a) .......................................................................................................... 1

Other Authorities

McLaughlin, 'Civil Practice', 17 Syracuse Law Review 331 (1966) ............................... 1

Siegel's N.Y. Practice, C5222:8 ........................................................................................ 2

Judgment Creditor The Export-Import Bank of Republic of China ("Ex-Im Bank")

submits this Reply Memorandum of Law in support of its motion for an order permitting Ex-Im

Bank to serve a restraining notice on Exelon Generation Company, LLC ("Exelon Generation").[1]

## PRELIMINARY STATEMENT

Under New York CPLR 5222,[2] a restraining notice "may be issued by … the attorney for

the judgment creditor …."  CPLR 5222(b) states, in relevant part:

> A restraining notice served upon a person other than the judgment
> debtor… is effective… if… he or she is in the possession or
> custody of property in which he or she *knows or has reason to
> believe* the judgment debtor…has an interest….[3]

So CPLR 5222(b) envisions this very case: "a person other than the judgment debtor" (Exelon

Generation) will be restrained from paying out a sum ($23.6 million dollars) in which the

judgment debtor (Niger) "has an interest…."[4]  This is routine.  And typically, Ex-Im Bank would

---

[1] The Order to Show Cause reflects exactly that.  It requires the parties to show why

> "an order should not be entered, pursuant to 28 U.S.C. §1610(c),
> Rule 69(a) of the Federal Rules of Civil Procedure, and Section
> 5222(b) of the New York Civil Practice Law and Rules,
> authorizing Ex-Im Bank to serve a restraining notice on Exelon
> Generation and thus forbid it 'to make or suffer any sale,
> assignment, or transfer of, or interference with' any property in
> which Niger or SOPAMIN has an interest…."

[2] Pursuant to Federal Rule of Civil Procedure 69(a), the procedure for enforcing a money judgment is that of the state in which the court rendering the judgment is found.  *Vinos Argentinos Imports USA, Inc. v. Los Andes Imports, Inc.*, No. 91 CIV. 2587 (JSM), 1993 WL 465353, at *1 (S.D.N.Y. Nov. 8, 1993).

[3] Unless otherwise indicated, all emphasis is supplied.

[4] The restraining notice "may be used in conjunction with other enforcement devices, to 'maintain the status quo while the judgment creditor seeks a delivery, turnover, or receivership order in what were formerly called supplementary proceedings….'"  *Plaza Hotel Associates v. Wellington*, 378 N.Y.S.2d 859, 863 (Sup. Ct. N.Y. County Nov. 3, 1975) (citing McLaughlin, 'Civil Practice', 17 Syracuse Law Review 331, 369–70 (1966)).

have to make no "showing" in connection with SOPAMIN's relationship to Niger before serving the restraining notice.

However, here, the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq.* (the "FSIA"), may impose the requirement of court approval before a CPLR 5222(b) restraining notice is served in connection with a sovereign's judgment debt. The operative language is:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment….

28 U.S.C. §1610(c). It is unclear that court permission is necessary;[5] but, in any event, the standards governing the court's grant of permission are modest indeed. In *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988), Judge Haight noted:

> [T]he court must determine that a reasonable period of time has elapsed following the entry of judgment . . . In determining whether the period has been reasonable, the courts should take into account procedures . . . that may be necessary for payment of a judgment by a foreign state, which may take several months . . . I am satisfied that two months from the date of this Opinion would be a 'reasonable period of time. . . .'"

*See also Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (KBF), 2013 WL 1155576, at *35 (S.D.N.Y. Mar. 13, 2013) (100 days sufficient).

Here, sixteen years have elapsed. That ends the FSIA inquiry. However, New York and federal cases suggest that, at an early stage of the restraint, a "plausible" or "prima facie" showing should be made of the alter ego relationship in connection with the restraint of funds in

---

[5] The language of 28 U.S.C. § 1610(c) refers to "attachment or execution." A restraint under CPLR 5222 is neither an attachment nor execution. Unlike restraints, attachments and executions provide a lien on assets. *USA Auto Funding, LLC v. Washington Mut., Inc.*, No 16440/05, 2006 WL 1493115, at *1 (Sup. Ct. Nassau County Mar. 30, 2006); Siegel's N.Y. Practice at C5222:8. However, in an abundance of caution, Ex-Im Bank chose to seek court permission.

2

which the judgment debtor (Niger) has an "interest."  Thus (and again, in an abundance of

caution), Ex-Im Bank made a very substantial showing in its moving papers (far exceeding

"plausible" or "prima facie") of the alter ego relationship.

In *Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579 (S.D.N.Y. 2012) (Rakoff,

J.), Northern Mariana Islands ("Mariana") had obtained judgments against William and Patricia

Millard.  Mariana garnished an account at Merrill Lynch belonging to the Millard Foundation,

alleging that the Foundation was a "front" for the judgment debtors.  Mariana then sought a

turnover of the funds (CPLR 5225(b)), and the Millard Foundation objected.  But the Court said,

> [T]he Court has previously found that [Mariana] has *plausibly*
> *alleged* that a) the Millards have an interest in the Account, and b)
> that [Mariana] has a right of possession to the funds in the Account
> superior to that of the Foundation….

*Id.* at 583.

Judge Rakoff went on to say:

> *At this stage,* of course, a creditor need not prove these elements of
> its case.  Rather, *similar to the standards for filing a complaint*, a
> creditor must *plausibly allege* that it can meet its burden.

*Id.* at 583-584.  That was the Court's holding long after the restraint had been served; *Mariana*

was a turnover proceeding, the final step.  Here we are at the *first* step: a mere restraint of funds,

where the requirements of initial proof would be, if anything, even less demanding.[6]

---

[6] Once the restraining notice is served under CPLR 5222, a statutory system of rights, protections and burdens is initiated.  The restraining notice is limited in time; there are notice requirements to the debtor; there are provisions for damages; there are provisions for the garnishee to seek to eliminate the restraint.  *See* CPLR 5222(c)-(k) and CPLR 5222-a.  The CPLR also provides in related sections for execution and turnover (CPLR 5225 and 5230).  In other words, the restraining notice is the first step of a carefully calibrated and integrated set of CPLR provisions.

## IMMINENT DAMAGE TO EX-IM BANK IF THE FUNDS ARE NOT RESTRAINED

The $23.6 million dollar debt from Exelon Generation to SOPAMIN is almost surely Ex-Im Bank's only shot at recovery of a small portion of the unpaid judgment.  The harm to Ex-Im Bank should those funds leave the country would be certain and immediate.[7]

The hearing put a spotlight on that harm, and on the "reliability" of Exelon Generation and SOPAMIN's forecasts about future developments.  The hearing began with assurances by Exelon Generation and SOPAMIN of future uranium deliveries and payments that would afford Ex-Im Bank numerous opportunities to collect.[8]  The hearing ended with a full scale retreat by Exelon Generation and SOPAMIN, when they realized that the Court was contemplating a creative solution that actually *relied* on their representations.[9]

We deal with the supposed harm to SOPAMIN and Exelon Generation below. But a few words here. First:  if the restraint does indeed result in some trouble for SOPAMIN (and that is dubious, see below), the harm was caused by its 98% owner and principal, Niger, whose behavior over the last 16 years toward the United States federal courts and its judgment creditor

---

[7] If, notwithstanding all Ex-Im Bank's arguments, Ex-Im Bank's request for permission to restrain were to be denied, and the temporary restraining order ("TRO") were to be lifted, then Ex-Im Bank would respectfully request a stay to make an emergency appeal to the United States Court of Appeals for the Second Circuit.

[8] SOPAMIN: "There is another shipment coming in June, July….[t]here is another two shipments after that in 2016….[t]here is gonna be plenty of money coming down the pipeline." *See* transcript of February 11, 2015 hearing before the Court ("Tr.") attached to the accompanying Declaration of Paul E. Summit dated February 13, 2015 (the "Summit Decl.") as Ex. A at 5:16-5:20.  Exelon Generation: "[T]here is really no reason to stop us from making this payment, in particular given that there are gonna be subsequent payments that are going to be made…." Tr. at 8:14-18:16.

[9] SOPAMIN: "So the risk is that my client doesn't deliver in June or July…." Tr. at 31:15-31:16.  Exelon Generation: "And as Mr. Summit has stated, that then SOPAMIN decides not to deliver any uranium to us in the summer." Tr. at 26:6-26:7.

Ex-Im Bank has been disgraceful.[10]  And Niger has now had the benefit of Ex-Im Bank's $60 million dollar loan for over 20 years, without re-payment.  Second:  debt collection *is* often disruptive and inconveniently timed.  But SOPAMIN, as the 98% owned creature of this defiant debtor, has an inherent exposure.  Exelon Generation chose to do business with it.  And, in its wisdom, the New York legislature created broad powers of restraint to assist creditors by authorizing exactly what is intended here.

In response to the motion, Exelon Generation and SOPAMIN have introduced nothing but red herrings.

### RED HERRING ONE: "ACTUAL ADJUDICATION"

In its Memorandum in Opposition, Exelon Generation states:

> [T]he cases cited by Ex-Im actually demonstrate that the alter ego claim must be ***actually adjudicated*** [emphasis and boldface in original] before a restraint can issue. *See Thompson v. Pollack*, 873 N.Y.S.2d 173, 175 (2nd Dept. 2009) (alter ego claim was adjudicated based on submitted evidence prior to issuance of restraint); *see also Plaza Hotel Assocs. v. Wellington Associates, Inc.*, 378 N.Y.S.2d 859, 863-64 (Sup. Ct. 1975) (same); *Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 263 N.Y.S.2d 354, 356 (Sup. Ct. New York County 1965), *aff'd*, 267 N.Y.S.2d 477 (1st Dept. 1966) (same).

Exelon Generation Opp'n Mem. at 4.

The cases actually stand for precisely the opposite:

1.   *Thompson v. Pollack*, 873 N.Y.S.2d 173 (2d Dept. 2009):  Exelon Generation says that in *Thompson* "the alter ego claim was adjudicated based on submitted evidence prior to issuance of [the] restraint."  Exelon Generation Opp'n Mem. at 4.  The opposite happened.  The

---

[10] And that behavior *counts*.  As the Second Circuit said in *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012), "Argentina will simply refuse to pay any judgments…." And the Court noted Argentina's "continual disregard for the rights of its…creditors and the judgments of our courts to whose jurisdiction it has submitted…." *Id.* Niger stands in Argentina's shoes.

lower court had *vacated* a restraining notice that restrained payment to an alter ego, even though evidence had been "submitted."  The Second Department *restored* the restraining notice *prior to* any hearing; and then *scheduled* a hearing "to determine whether the defendant has an 'interest' in the Signature One Bank Account within the meaning of CPLR article 52...."  *Id.* at 175.

2.   *Plaza Hotel Associates v. Wellington Associates, Inc.*, 378 N.Y.S.2d 859 (Sup. Ct. N.Y. County Nov. 3, 1975):  The judgment creditor served a restraining notice on a partnership, Wellington Associates, not on the judgment debtor, Wellington Associates, Inc.  There was *no* "submitted evidence"; the judgment creditor simply issued the restraining notice, as it had the right to do.  The partnership challenged the restraint; it "urge[d] that it is a stranger to this action...." *Id.* at 863.  But the Court refused to vacate the restraint, and said:

> Plaintiff has shown, *at least prima facie*, that movant partnership and defendant corporation are in fact one and the same, with the sole difference being one of form....

*Id.* at 864.

3.   *Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 263 N.Y.S.2d 354, 356 (Sup. Ct. New York County 1965), *aff'd*, 267 N.Y.S.2d 477 (1st Dept. 1966):  A judgment creditor served a restraining notice on Chemical Bank, specifying several bank accounts held in a name other than the judgment debtor, as debts owed to the judgment debtor, or as property in which the judgment debtor held an interest.  Chemical nevertheless honored checks drawn against those accounts, taking the position (like Exelon Generation's position here) that "*there had been no adjudication* as to judgment debtor's interest in the corporate accounts...." *Id.* at 356.  Unfortunately for Chemical Bank (and, here, Exelon Generation), the Court rejected that position.

> This proceeding involves a restraining notice *authorized by CPLR 5222.*  No claim is being presented to the bank, nor is payment

requested, but *merely that transfer is forbidden except pursuant to an order of the court*.[11]

*Id.* at 359-360.

### RED HERRING TWO:  THE "SUBJECT MATTER JURISDICTION" CHALLENGE

SOPAMIN challenges subject matter jurisdiction as well, citing a host of inapposite cases.  *See* SOPAMIN Opp'n Mem at 8-12.  None of them are brought under the FSIA, the critical distinction.  This Court has subject matter jurisdiction over any controversy involving SOPAMIN through 28 USC Section 1330.

The seminal case establishing the principle relied upon by SOPAMIN is *Peacock v. Thomas*, 516 U.S. 349 (1996).  That case governs the various cases that SOPAMIN cites.  Since *Peacock*, numerous veil-piercing cases involving sovereigns have been litigated.  If SOPAMIN were correct, then all those courts (including the Second Circuit) would have been proceeding without subject matter jurisdiction.

### RED HERRING THREE:  PERSONAL JURISDICTION OVER SOPAMIN

SOPAMIN argues at length that this Court lacks personal jurisdiction over it.  That is wrong, and also irrelevant.

---

[11] *JSC Foreign Econ. Ass'n and Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003), is not to the contrary.  Plaintiff sued two defendants, Reich and Jossem.  *Pre-judgment*, plaintiff sought a preliminary injunction against Reich and Jossem, preventing them from disposing of assets.  *Id.* at 370.  Plaintiff claimed no lien or equitable interest in the assets plaintiff sought to enjoin, and for this reason (among others) the preliminary injunction was denied. Plaintiff had also issued restraining notices pursuant to CPLR 5222 on Reich, Jossem, and entities believed to hold assets of Reich and Jossem.  The Court vacated the pre-judgment *restraining* notices; in the words of the Court, restraining notices "may not be used as an end-run around the requirements of the *prejudgment attachment statutes*…." *Id.* at 393. Exelon Generation's other cases are equally irrelevant.  *See UBS Securities LLC v. Highland Capital Mgt., L.P.*, 42 Misc. 3d 580, 594 (Sup. Ct. 2013) (pre-judgment attachment on alter ego improper under Debtor/Creditor law); *Fischer Diamonds v. Meyer Designs*, 2006 WL 1720431 (E.D.N.Y. 2006) (pre-judgment attachment of defendant's alter egos to prevent shifting of assets not available; end run around Fed. R. Civ. P. 64, prescribing pre-judgment remedies, unacceptable).

At this stage, personal jurisdiction over SOPAMIN is unnecessary.  This Court only needs personal jurisdiction over the garnishee.  Two cases suffice.  In *Northern Mariana Islands v. Millard*, *supra*, Judge Rakoff commented:

> Under New York law, when a turnover application is brought under CPLR 5225(b), the creditor is proceeding against a person, in order to "demand that" this person (the garnishee) "convert property for money for payment to a creditor."….therefore, the court need only have *in personam* jurisdiction over the garnishee; it does not need to have personal jurisdiction over the judgment debtor or *in rem* jurisdiction over the property in question.

845 F. Supp. 2d at 583.  And Judge Rakoff went on:

> The relevant question is whether the Court has in personam personal jurisdiction over the garnishee Merrill Lynch rather than over the Foundation.

*Id.  See also Centerpointe Corporate Park Partnership 350 v. MONY*, 946 N.Y.S.2d 354, 355 (4th Dept. 2012) ("Only the stakeholder must be named as a party to a turnover proceeding, and joinder of the judgment debtor and 'any adverse claimant' is permissive…..")

So jurisdiction over SOPAMIN is irrelevant.  However, if SOPAMIN believes it has vital interests to protect, there is no obstacle to its voluntary participation, which it has already initiated.

## RED HERRING FOUR:  THE IMMINENT HARM TO SOPAMIN AND EXELON GENERATION

SOPAMIN's representations of harm are wildly speculative.

No doubt the Court recalls SOPAMIN's counsel's attempt to tie current unrest in Niger to the future possibility that payment may be delayed beyond the due date.  SOPAMIN's papers are similarly unfounded.

As to economic disruption:  failure to make the Next Payment would supposedly disrupt "the entire economic activity in Niger" because SOPAMIN could not pay the mining company

operators, and mine workers would quit.[12]  Not so.  The majority owner of the mines is Areva, the world's largest nuclear power company, with €8.3 billion in revenue in 2014.  Summit Decl., Ex. B.  Areva can make payroll.  SOPAMIN also says that without the Next Payment it will default on obligations, and its reputation will be destroyed.  Moussa-Gros Decl., ¶ 5.  Yet SOPAMIN has provided no proof as to its current assets and liabilities – or its reputation.[13]

As to terrorism, SOPAMIN's "case" is even lamer.  Terrorism exists in Niger, and has for years.[14]  To associate the Next Payment with terrorism is desperate.

And Exelon Generation now claims it would be unable to supply energy to other customers if the SOPAMIN supply were disrupted. Tr. at 4:12-4:15.  But that is not what Exelon Generation said several months ago in deposition.  In fact, Exelon Generation has contracts with twelve to fourteen other suppliers, including Areva, Tenex, Rio Tinto, and Cameco.[15]  Uranium is fungible, like gold bars.  Tr. of Nevling 41:7-41:9.  Indeed, when Exelon Generation entered into the SOPAMIN contract it was "indifferent" as to whether SOPAMIN was "actually going to

---

[12] *See* Declaration of Hamma Hamadou, dated February 10, 2015 (the "Hamadou Decl.) at ¶ 13; Declaration of Anthony Mavronicolas, dated February 8, 2015 (the "Mavronicolas Decl.") at ¶ 8, Declaration of Ibrahim Moussa-Gros, dated February 5, 2015 (the "Moussa-Gros Decl.") at ¶ 7.

[13] Why didn't SOPAMIN provide its bank statements?  Exelon Generation alone has paid SOPAMIN over $400 million over the life of its contracts (Summit Decl., Ex. C); SOPAMIN has no liquid reserves?  What about a loan from its 98% owner Niger?  We know that SOPAMIN has borrowed previously from its bank creditor Sonibank in Niger (Hamadou Decl., ¶ 6); why not borrow again?

[14] Earlier this month, Boko Haram entered Niger and carried out several attacks. Attacks were carried out on the uranium mines in May 2013 and 2010.  Hamadou Decl., Ex. 11; Moussa-Gros Decl., Ex. 2.  None of this, of course, has *any* relationship to payments being made from Exelon Generation to SOPAMIN.

[15] *See* Transcript of the November 11, 2014 Deposition of James Nevling ("Tr. of Nevling") attached as Ex. D to the Summit Decl. at 25:18-26:5.  Exelon Generation has admitted that SOPAMIN is one of Exelon Generation's "second-tier suppliers." Tr. of Nevling 26:9-26:14.

perform or not" because Exelon Generation could purchase from any of its other suppliers. Tr. of Nevling 27:19-28:10.

## RED HERRING FIVE: THE COMMERCIAL USE EXCEPTION

SOPAMIN sells uranium to Exelon Generation in the United States; and is paid many millions of dollars (over $400 million so far) for those commercial transactions.  Summit Decl., Ex. C.  The Nigerien uranium is often transferred to Exelon Generation at the site of a "converter" in the United States.  (A "converter" is the facility where the uranium is processed for nuclear energy use).  For example, the U.S. converter in the SOPAMIN-Exelon Generation business relationship is often ConverDyn, operating the Honeywell Metropolis facility in Illinois. Tr. of Nevling 65:5-65:9; 70:17-70:24.

The contract between SOPAMIN and Exelon Generation states:

> The Sales Price includes all costs of (i) transporting the Nigerien-origin Concentrates from the mine to the Convertor, including costs of shipping containers, packing, handling, loading and carriage to the Convertor, (ii) insurance against loss as provided in Clause 4.2, (iii) weighing, sampling and analysis, assaying, impurity surcharges, and meeting the Converter's conversion facility requirements, (iv) any Taxes as defined above.  To the extent that Exelon pays any such costs, it may deduct such payment from the Sales Price otherwise due under this Agreement.

Hamadou Decl., Ex. 10, § 7.2.

Thus it is apparent, even without discovery yet from SOPAMIN, that SOPAMIN is responsible for the costs in the United States of transporting, weighing, taxes, etc.

Notwithstanding the obvious commercial and U.S. nature of these transactions, SOPAMIN and Exelon Generation contend that no restraint should be issued because the funds are not subject to the "commercial use in the United States" provisions of the FSIA.  They are wrong.

Section 1610(a) of the FSIA addresses property of a sovereign, and requires that a sovereign's property must be "used for a commercial activity in the United States" if it is to be attached or executed upon.  28 U.S.C. § 1610(a).

Exelon Generation cites *Export Import Bank of the Republic of China v. Grenada* ("*Grenada*"), 768 F.3d 75 (2d Cir. 2014), but conveniently omits the central lesson of the case. As to the principal property at issue (bond payments arising from bonds issued by the Grenada Aviation Authority), the District Court had denied Ex-Im Bank the opportunity for discovery. *Grenada*, 768 F.3d at 82.  The Second Circuit was troubled by the "sparse" factual record, which "does not disclose many facts that would bear on a careful determination of immunity from attachment."  *Id.* at 92.  It therefore reversed the District Court and remanded for further discovery. The Second Circuit concluded that "without this information, we are unable to adequately evaluate [the leading precedent's] applicability to the present action…." *Id.*

Here, the 538 pages of declarations and exhibits from SOPAMIN carefully avoid any discussion of SOPAMIN's activities in the United States.  Put simply: there is already abundant evidence of commercial use in the United States, and discovery will offer this Court the opportunity to rule on a proper record.

## EX-IM BANK IS ENTITLED TO DISCOVERY

The Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, 134 S.Ct. 2250 (2014), establishes that the FSIA provides no shield to post-judgment discovery.  As the Court noted, the FSIA says "not a word" on discovery; and imposes no limitation on discovery in aid of execution of a foreign-sovereign judgment debtor's assets.  *Id.* at 2256.

Many prior cases were decided under the misconception that discovery against sovereigns was limited.[16]  That is no longer so.  Post-judgment discovery is broadly authorized "to all matters relevant to the satisfaction of the judgment" under CPLR 5223.  *Banco Central De Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 3006 (Keenan, D.J.) ("[E]ven if the discovery request is a 'fishing expedition' . . . this Court recognized long ago that 'a judgment creditor is entitled to fish for assets of the judgment debtor'") (internal citation omitted); *see also In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 792 (S.D.N.Y. 2005) (discovery warranted where record was not clear as to entity's status as foreign instrumentality; "the affidavits on which the parties ask the Court to rely have not been subject to cross-examination and are rather self-serving").

SOPAMIN not only seeks to avoid any discovery, but has asked the Court to deny Ex-Im Bank's relief on a self-serving factual record that has been untested by discovery or cross-examination.  SOPAMIN filed four declarations.[17]  Though brimming with hearsay and conclusions, they contradict none of the facts from Ex-Im's moving papers showing Niger's domination and control.

To the contrary, they confirm the facts.  Nine of the eleven directors are appointed by Niger (Hamadou Decl., Ex. 2, Article 14 of SOPAMIN's by-laws).  They do not represent SOPAMIN; they "represent the State." *Id*.  The President of the Board of Directors and General Director of SOPAMIN are appointed "in consultation with the Minister in charge." *Id.*, Articles 15 and 17.  As to those nine directors appointed by Niger who "represent the State": it is hard to

---

[16] *See, e.g., Rubin v. Islamic State of Iran*, 637 F.3d 783, 795-797 (7th Cir. 2011) (court cannot compel a foreign state to submit to general discovery).

[17]  The Declarations are by a member of the Board of Directors; SOPAMIN's Chief Trader; and two lawyers.

imagine a clearer statement of loyalty to Niger (not SOPAMIN); and domination of SOPAMIN by Niger.

And the declarations also reveal, inadvertently, some fascinating additional facts.  The *shareholders* (that is, Niger) "establish dividends and the distribution of profits."  Hamadou Decl., Ex. 2.[18]  This power is taken based on a mere "majority of the votes cast" (Niger has 98%).  *Id.*

The 538 pages are fascinating also for what they do *not* include.  As to the pending "emergency" over the Next Payment, the declarations fail to answer such obvious questions as: how much money does SOPAMIN have right now in bank accounts?  Does it have a line of credit?  Does it routinely obtain either short term or long term financing?  Does it raise money through bond sales? Of the $23.6 million owed to SOPAMIN, what is profit to SOPAMIN, and what is cost of the goods?[19]

And, as to domination by Niger: what are SOPAMIN's annual revenues?  How much money does SOPAMIN pay every year to Niger?  How much money does SOPAMIN receive every year from Niger?  Do audited financial statements exist?

Ex-Im Bank must be allowed discovery on these issues.  A denial of discovery would be an "especially crippling blow" to Ex-Im Bank. *Villante v. Dep't of Corr. of N.Y.C.*, 786 F.2d 516, 521 (2d Cir. 1986) (denial of discovery to counter affidavits was an abuse of discretion).  As this

---

[18]  Hamma Hamadou, a long-standing director, never reveals if he is one of the nine (out of eleven) appointed directly by Niger who "represent the State" as they serve on SOPAMIN's Board.  Hamadou Decl., ¶ 1

[19]  The declarations refer extensively to balance sheets, short term financial statements (including a "draft program contract with the State"), and financial statements at the end of the fiscal year, but (tellingly) do not provide these documents. *See e.g.*, Hamadou Decl., Ex. 2.

Court noted, it must have "all the information [it] needs to make this very important decision." Tr. at 3:7-3:8.[20]

One of the declarations is by a French lawyer, Robert Follie, and the declaration is "made under French law."[21]  Follie concludes that "under Nigerien law, [SOPAMIN] is a separate legal entity."  Follie Decl. ¶ 23.  But French *and* Nigerien law are irrelevant.  The alter ego analysis is governed by U.S. federal common law.  *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 621-622 (1983) ("To give conclusive effect to the law of the chartering state in determining whether the separate juridical status of its instrumentality should be respected would permit the state to violate with impunity the rights of third parties under international law while effectively insulating itself from liability in foreign courts. We decline to permit such a result.").  *See also EM Ltd. v. Republic of Argentina*, 389 Fed. App'x 38, 41-43 (2d Cir. 2010) (applying New York law to trust of foreign sovereign debtor).[22]

## THE TRO BOND

A court has discretion as to the amount of the bond, including dispensing with it altogether.  *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996).  For instance, a court may forgo the bond requirement where the injunction is needed to protect its jurisdiction over property in suit, *Doyne v. Saettele*, 112 F.2d 155, 162 (8th Cir. 1940).  Indeed, that is the

---

[20] We could fill many pages with potential cross-examination of the declarants, but one simple line of examination should suffice.  Hamadou is a SOPAMIN board member.  Is he one of the nine out of eleven who "represent the State"?  Which government Minister appointed him to the board?  If he "represents" Niger, does he have fiduciary obligations to Niger, or to SOPAMIN?  What Minister gives him his instructions?  Has he ever defied his appointing Minister?

[21] *See* Declaration of Robert Follie, dated February 9, 2015 (the "Follie Decl."), ¶ 2.

[22] The other lawyer declaration is by Mr. Mavronicolas, U.S. counsel to SOPAMIN, and summarizes the other three declarations.

case here.  The TRO and civil restraint are needed for one reason: to stop SOPAMIN from removing the property from the jurisdiction.  Absent the restraint, this dispute will become moot.  SOPAMIN will win, not because it was right, but by force of its own actions to extinguish the Court's jurisdiction.

There is another equally powerful reason why no more money for the bond is required.  SOPAMIN has a complete remedy for any possible damages caused by the brief restraint.  It can set off any damages caused by the injunction against future dividend payments to its 98% owner, Niger.  *See U.S. v. Bedford Assocs.*, 618 F.2d 904 (2d Cir. 1980) (no bond required because enjoined party can recoup damages out of future rental payments).

Indeed, the Supreme Court applied the same logic in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"),* 462 U.S. 611, 621-622 (1983).  There, the Supreme Court permitted Citibank to set off damages suffered from Cuba's expropriation of its assets against its obligation to pay a Cuban national trade bank—part owned by Cuba—because Cuba would be the ultimate beneficiary of any recovery in suit by the instrumentality.  Here too:  if SOPAMIN were to prevail on a claim against a bond, the 98% beneficiary would be Niger, an entity that not only has refused to pay on a judgment issued by this Court, but refuses even to participate in post-judgment proceedings.  It would be a travesty if Niger were placed in a position "to reap the benefits of our courts while avoiding the obligations of international law." *Bancec*, 462 U.S. at 634.

Finally, no additional bond is required because the TRO is sought in connection with a restraining order under CPLR 5222, and the additional time is required only because of the permission requirement of 28 U.S.C. § 1610(c).  No bond, however, is required under CPLR

5222.  *See Sumitomo Shoji N.Y.*, 263 N.Y.S.2d at 358 (describing Governor's veto of requirement to post a bond for restraining notice).

## **<u>CONCLUSION</u>**

For the foregoing reasons, Ex-Im Bank respectfully requests that this Court 1) continue its order restraining Exelon Generation, Niger, SOPAMIN, and any other person or entity with notice of the order from making or permitting a payment from Exelon Generation to SOPAMIN or Niger; and (2) grant Ex Im Bank permission to serve a restraining notice on Exelon Generation.


Dated:  New York, New York                    SULLIVAN & WORCESTER LLP
           February 13, 2015


                                              By: /s/ Paul E. Summit
                                                  Paul E. Summit
                                                  Andrew T. Solomon
                                                  Caitlin C. Fahey (admitted *pro hac vice*)
                                              1633 Broadway
                                              New York, NY 10019
                                              Tel: (212) 660-3000
                                              Fax: (212) 660-3001
                                              psummit@sandw.com
                                              asolomon@sandw.com
                                              cfahey@sandw.com

                                              *Attorneys for Petitioner/Judgment Creditor*