UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF THE REPUBLIC OF
CHINA,

                        Judgment Creditor,

           -against-

REPUBLIQUE DU NIGER,

                        Judgment Debtor,

LA SOCIETE DE PATRIMOINE DES MINES DU NIGER,

                        Interested Third Party.
-----------------------------------------------------------------X

97 Civ. 3090 (LAK)

**DECLARATION OF ABDOULAYE ISSA**

ABDOULAYE ISSA, declares and states as follows:

1. I am the Managing Director of SOMAÏR (Société des Mines de l'Aïr) a company duly existing and organised under the laws of Niger, with a share capital of 4.348.900.000 Francs CFA, registered under number NI - NIM - 2004 - B - 713, NIF 1217/R, having its registered office in Niamey Immeuble SONARA 1, Rond point KENNEDY, BP 12 910 ;

2. I certify on my honour that SOMAÏR has, under an off-take contract signed on January 2015, delivered to EXELON in the name of and on behalf of the SOPAMIN (Société de Patrimoine des Mines du Niger), 200 tons of uranium ore concentrate to EXELON (USA) for a value of ten billion two hundred fifty one millions four hundreds sixteen thousands four hundred and nine Francs CFA (10.251.416.409 FCFA). The payment of such sale should be made on February 9th 2015. We understand that SOPAMIN has no financial means, other than coming from EXELON, to pay such delivery to SOMAÏR. On its side, SOMAÏR is

dependent on SOPAMIN's payment as it is in a negative cash flow situation; all its available bank credit facilities are already fully used.

3. I have been informed that a United States' Court has seized or may seize EXELON's payment due to SOPAMIN in a dispute between Eximbank and Niger State.

4. Should that decision be enforced, and SOPAMIN not pay to SOMAÏR the 10.251.416.409 FCFA owed for the off-take of uranium, it would cause a serious and probably irremediable prejudice to SOMAÏR which will likely result in its insolvency in March 2015. An insolvency on SOMAÏR will negatively affect:

   i. About 2.500 employees of SOMAÏR and of its sub-contractors which will be laid-off;
   ii. A major disruption of North Niger's economy, which relies significantly on Uranium mining and is already heavily impacted by terrorist activities, despite ongoing help by American and French troops in the area of the mine;
   iii. All our local subcontractors will probably fall in bankruptcy too, especially SONICHAR the power supplier of all North Niger;
   iv. The other uranium mining company in the area, "Compagnie Minière d'Akouta" (COMINAK) is also at risk due to shared costs, contracts and suppliers that can't be borne by the COMINAK alone;
   v. SOMAÏR currently owes a Short-term credit (13,1 billion FCFA) to local banks in addition to an important bank overdraft (12 billion FCFA). The non-payment of the next term to the banks is a significant breach which will trigger the termination of the entire loans and immediate reimbursement of all sums due thereunder, including interests. This event will be the trigger for declaring

2

      the insolvency of SOMAÏR, as the parent company AREVA will not increase its long term loan to SOMAÏR (6.2 billion FCFA);

vi.   The state of Niger is already owing SOMAÏR close to 18 billion FCFA with no prospect of recovering this money soon, as the current proceedings show. Moreover, the very weak financial health of the company had led SOMAÏR to request and obtain the postponing of some debts from AREVA (6.2 Billion) and Niger State to 2018. Thus, SOMAÏR does not expect AREVA to lend more cash after the cash support already provided.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 17, 2015

(Signature)
Abdoulaye Issa