USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

THE EXPORT-IMPORT BANK OF
THE REPUBLIC OF CHINA,

                                 **Judgment Creditor,**                      97-CV-03090 (LAK)(SN)

         -against-                                  **MEMORANDUM & ORDER
IMPOSING SANCTIONS**

REPUBLIQUE DU NIGER,

                                 **Judgment Debtor.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      Before the Court is a motion for sanctions brought by the judgment creditor The Export-Import Bank of the Republic of China ("Ex-Im Bank") against the judgment debtor République du Niger ("Niger"), in which Ex-Im Bank requests that the Court: (1) order Niger to pay the expenses and reasonable attorney's fees incurred by the petitioner in filing a motion to compel discovery, pursuant to Rule 37(a)(5)(A); and (2) impose additional sanctions, in the amount of $5,000 per day, until Niger complies with its obligations, pursuant to the Court's inherent sanctioning power.

      The Court GRANTS in part and DENIES in part Ex-Im Bank's motion. First, the Court grants Ex-Im Bank's motion to compel and grants Ex-Im Bank's motion for attorney's fees. Ex-Im Bank shall submit a fee application, detailing the requested amount of attorney's fees and expenses by March 27, 2015. Second, the Court grants in part Ex-Im Bank's motion to impose additional sanctions. The Court imposes sanctions in the amount of $2,500 per calendar day against Niger, beginning March 30, 2015, and continuing until Niger complies with its discovery obligations. Niger may raise a defense, detailed below, or comply with its discovery obligation, by March 27, 2015, to purge its contempt and avoid this sanction.

**BACKGROUND**

Familiarity with the facts of this case is assumed. In brief, however, in the early 1990s, Ex-Im Bank made a $60 million loan to Niger. Niger agreed, in the loan contracts, to submit itself to the Court's jurisdiction and to waive its sovereign immunity. See Second Decl of Paul E. Summit in Support of Ex-Im Bank's Order to Show Cause ("Second Summit Decl."), dated Feb. 18, 2015, Exs. A (June 8, 1992 Loan Agreement) & B (June 4, 1993 Loan Agreement) (ECF No. 88). This waiver extends to post-judgment collection proceedings, as indicated in the loan contract itself and by this Circuit's case law. Id.; First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 53-54 (2d Cir. 2002) ("The waiver by a foreign state [of its sovereign immunity], rendering it party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case including discovery pertaining to the judgment debtor's assets.").

Niger defaulted on its loan repayment, and on April 29, 1997, Ex-Im Bank brought this action. Niger initially was represented by counsel at the ensuing court proceedings. On October 20, 1998, the Honorable Lewis A. Kaplan entered judgment in favor of Ex-Im Bank: Niger was ordered to pay (1) $60,706,710.06 on the First Note, plus yearly interest at a rate of 4.5% per annum subsequent to October 7, 1996, plus default interest at a rate of 10% per annum from March 1, 1997, to the date of judgment, and (2) $11,959,293.41 on the Second Note, plus yearly interest at a rate of 4.5% per annum subsequent to October 7, 1996, plus default interest at rate of 10% per annum from March 1, 1997, to the date of judgment. (ECF No. 44.) Niger has failed to pay.

On April 16, 2002, Ex-Im Bank filed a motion to compel Niger to answer interrogatories and produce documents responsive to their demands, and in the alternative, to compel sanctions against Niger, pursuant to Rule 37. (ECF No. 53.) Niger did not respond to the motion, and on

2

August 5, 2002, the Honorable Theodore H. Katz granted the motion and directed Niger to respond to the discovery demands by no later than August 23, 2002. (ECF No. 55.) Niger has never responded to the discovery and has failed to appear in any subsequent judicial proceeding.

On June 11, 2014, Ex-Im Bank served Niger with Plaintiff's Second Set of Post-Judgment Interrogatories and Second Set of Post-Judgment Requests for Production of Documents. And on June 23, 2014, Ex-Im Bank served Niger with an Information Subpoena (collectively, the "Discovery Requests"). Declaration of Paul E. Summit, dated Jan. 29, 2015 ("Summit Decl."), at Exs. B-E. On August 28 and September 17, 2014, Ex-Im Bank's counsel met with Nigerian government officials to discuss the resolution of Niger's debt to the Ex-Im Bank, and renewed the requests that Niger comply with the Discovery Requests. Summit Decl. at Ex. F; Ex-Im Letter, dated Mar. 6, 2015 ("Ex-Im March Ltr."), at 2 (ECF No. 101).

Having received no response to its efforts to engage Niger, on January 29, 2015, Ex-Im Bank filed: (1) a motion to compel Niger to (a) answer the interrogatories and information subpoenaed by Ex-Im Bank, and (b) produce documents responsive to Ex-Im Bank's document demand; and (2) a motion for sanctions ordering Niger to pay the expenses and reasonable attorney's fees incurred by Ex-Im Bank in making this motion. (ECF No. 58-60.) On February 6, 2015, the Court ordered Niger to file a response by February 18, 2015 (which Niger never did) and scheduled a conference. (ECF No. 62.)

On February 27, 2015, the Court held a status conference, at which Niger failed to appear. Ex-Im Bank's counsel informed the Court that the morning of the hearing, Christopher Swart, Esq., a Singapore partner of Holman Fenwick Willan LLP ("Holman"), contacted Ex-Im Bank because Niger was in conversations with Holman regarding representation but had not yet retained the law firm. After the conference, pursuant to the Court's directive, Ex-Im Bank sent the conference transcript to Mr. Swart, as well as to the Nigerian officials with whom Ex-Im

Bank had met in August and September 2014: Mr. Boubacar Moussa Rilla (Chargé d'Affaires, Embassy of Niger); Mr. Maman Sani Arzika (Director General of Legislation and Litigation, Secretary General of Niger); and Mr. Boulama Mamane (Principal Inspector of the Treasury). See Ex-Im March Ltr. On March 6, 2015, Ex-Im Bank submitted a status letter in which it renewed its application for sanctions against Niger, pursuant to Rule 37 as well as the Court's inherent sanctioning power. Id.

## DISCUSSION

**I.     Sanctions Pursuant to Rule 37(a)**

Ex-Im Bank first moves the Court to order Niger to pay the expenses and reasonable attorney fees incurred by the petitioner in filing the motion to compel, pursuant to Rule 37.

Rule 37(a)(5)(A) provides, in part, that if a motion is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including the attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis supplied). The Rule continues: the Court must not order payment only if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Rule 37 applies in post-judgment collection cases. See, e.g., Banco Cent. Del Paraguay v. Paraguay Humanitarian Found., Inc., 01 Civ. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007).

Here, Ex-Im Bank asserts that none of Rule 37(a)(5)(A)'s exceptions applies. Ex-Im Bank has attempted "numerous times in good faith to obtain the requested discovery without court action." Ex-Im March Ltr. at 2. Relying on Ex-Im Bank's representations that they have

4

met twice, in person, with Nigerian officials, communicated briefly with Holman Fenwick attorney Mr. Swart, and have attempted written communication with Niger, the Court agrees that Ex-Im Bank has acted in good faith. Ex-Im Bank also asserts that Niger's nondisclosure is not justified and sanctions would not be unjust: Niger is subject to this Court's jurisdiction and has failed to abide by its post-judgment discovery obligations without explanation – obligations that it has defied from 1998 until today. The Court agrees that the exceptions to Rule 37(a)(5)(A) are not met.

Accordingly, the Court grants Ex-Im Bank's motion to compel the defendant to (a) answer the interrogatories and information subpoenaed by the petitioner, and (b) produce documents responsive to the petitioner's document demand. The Court also grants Ex-Im Bank's motion for Rule 37 sanctions. Ex-Im Bank shall submit a fee application, detailing the requested amount of attorney's fees and expenses, by March 27, 2015.

**II.     Sanctions Pursuant to the Court's Inherent Power**

Ex-Im Bank next moves the Court to impose additional sanctions, pursuant to the Court's inherent sanctioning power, in the amount of $5,000 per day, until Niger complies with its discovery obligations.

"The Court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (internal quotations and citations omitted). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002) (citation omitted). This includes sanctions for violations of post-judgment discovery. See Servaas Inc. v. Republic of Iraq, 9 Civ. 1862 (RMB), 2014 WL 279507, at *2 (S.D.N.Y. Jan. 24, 2014).

"[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 56 (2d Cir. 1982); S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010). Where, as here, a sanction is coercive, the Court has "broad discretion to fashion an appropriate coercive remedy." EEOC v. Local 28 Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir. 2001); Perfect Fit Indus., Inc., 673 F.2d at 57. Where a sanction is "both coercive and compensatory [] some proof of loss must be present to justify its compensatory aspects." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 658 (2d Cir. 2004) (quoting N.Y. N.O.W. v. Terry, 886 F2d 1339, 1353 (2d Cir. 1989)). Cf. Paramedics, 369 F.3d at 658 (noting that where a sanction is solely compensatory – rather than coercive, "the sanctions should correspond at least to some degree with the amount of damages") (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1062 (2d Cir. 1995)).

In determining whether, and in what amount, a coercive sanction is appropriate, courts consider the In re Grand Jury factors: "1) the character and magnitude of the harm threatened by continued contempt, 2) the probable effectiveness of the proposed sanction, and 3) the financial consequence of that sanction upon the contemnor." In re Grand Jury Witness, 835 F.2d 437, 443 (2d Cir. 1987) (citing United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947)). See Paramedics, 369 F.3d at 657-58 (holding same); Danaher Corp. v. Travelers Indem. Co., 10 Civ. 121 (JPO), 2014 WL 1133472, at *3 (S.D.N.Y. Mar. 21, 2014) (holding same).

In this Circuit, coercive sanctions for non-compliance have ranged from $500 to $5,000 per day. See, e.g., Perfect Fit Indus., Inc., 673 F.2d at 54-55 (affirming the district court's sanctions in the amount of $5,000 per day for the defendant's contempt of injunctive orders);

6

Servaas Inc., 2014 WL 279507, at *1 (imposing $2,000 per day against the defendant Republic of Iraq until the defendant complied with the discovery order); Gucci Am., Inc. v. Gucci, 07 Civ. 6920 (RMB), 2009 WL 440463, at *7 (S.D.N.Y. Feb. 20, 2009) (imposing $1,000 per day until the defendant produced discovery materials as required); Am. Honda Motor Co. v. V.M. Paolozzi Imports, Inc., 7:10 Civ. 0955 (FJS)(ATB), 2013 WL 1296421, at *7 (N.D.N.Y. Mar. 26, 2013) (imposing $2,000 per day until the defendant complied with the court's order); Leser v. U.S. Bank Nat. Ass'n, 09 Civ. 2362 (KAM)(ALC), 2011 WL 1004708, at *12 (E.D.N.Y. Mar. 18, 2011) (imposing $500 per day against a noncompliant non-party witness but giving the witness a brief opportunity to produce documents and purge his contempt). See also FG Hemisphere Assoc., LLC v. Democratic Republic of Congo, 603 F. Supp. 2d 1, 3 (D.D.C. 2009) aff'd, 637 F.3d 373 (D.C. Cir. 2011) (imposing contempt fines in the amount of $5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, until the Democratic Republic of Congo satisfied its discovery obligations, and imposing Rule 37 sanctions for the reasonable sanctions the plaintiff incurred in making its motion). "Ultimately, [] the overriding consideration is whether the coercive fine [is] reasonably set in relation to the facts and [is] not arbitrary." Perfect Fit Indus., Inc., 673 F.2d at 57.

    Here, the character and magnitude of the financial harm threatened are momentous. Niger has failed to satisfy, or even attempt to satisfy in any part, the order of judgment, entered sixteen years ago. What began as a roughly $75 million order of judgment in 1998 has now accrued with interest to over $180 million. See Ex-Im March Ltr. at 3, n.4. Since 1998, Niger has failed to appear in any proceedings before this court, and it has failed to respond to Ex-Im Bank's first and second set of discovery requests. Ex-Im Bank's meetings with Niger government officials, as well as the phone call Ex-Im Bank received from Mr. Swart purportedly on behalf of Niger (a potential client), convince the Court that Niger is aware of these court proceedings. Yet, given

the opportunity to contact the Court and remedy its non-compliance, it has failed to do so. The Court is hopeful, given these recent communications, that sanctions may effectively motivate Niger to act.

Although the Court is less certain of Niger's financial ability to make good on the sanctions, allowing Niger an opportunity to cure its contempt alleviates this concern. See, e.g., Exp.-Imp. Bank of Republic of China v. Grenada, 06 Civ. 2469 (HB), 2010 WL 5463876, at *5 (S.D.N.Y. Dec. 29, 2010) (imposing $1,000 per day against Grenada until it fully responded to interrogatories, but granting Grenada "a 14-day opportunity to purge its contempt," due to its financial difficulties). "[B]ecause a monetary civil contempt order is meant to be compensatory or coercive rather than punitive, a contemnor may be excused from paying monetary sanctions if he or she lacks the financial ability to pay." Leser, 2011 WL 1004708, at *11 (citing Paramedics, 369 F.3d at 658; Dell Inc. v. Compudirect, Inc., 316 F. App'x 32, 34 (2d Cir. 2009)). Niger, as the contemnor, has the burden of raising this defense and must establish any inability to pay "clearly, plainly, and unmistakably." Dell, 316 F. App'x at 34 (quoting Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995)).

Accordingly, the Court sanctions Niger $2,500 per day beginning March 30, 2015, and continuing until Niger responds to Ex-Im Bank's Discovery Requests. Niger may raise the above defense or comply with its discovery obligation to avoid this sanction by March 27, 2015. The Clerk of Court is directed to terminate the motion at ECF No. 58. Counsel for Ex-Im Bank is directed to serve this Order upon Niger through all known and previously established contacts.

**SO ORDERED.**


DATED:	New York, New York
	March 19, 2015